# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| **SIERRA CLUB**, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No._____ |
| | ) | |
| **UNITED STATES** | ) | |
| **ENVIRONMENTAL PROTECTION** | ) | |
| **AGENCY**, and **GINA MCCARTHY**, | ) | |
| in her official capacity as | ) | |
| Administrator of the United States | ) | |
| Environmental Protection Agency, | ) | |
| | ) | |
| *Respondent*. | ) | |

## PETITION FOR REVIEW

Pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1),

and Federal Rule of Appellate Procedure 15(a), Sierra Club petitions the United

States Court of Appeals for the Fifth Circuit for review of the final action of

Respondents United States Environmental Protection Agency and Gina McCarthy,

entitled "*Approval and Promulgation of Air Quality Implementation Plans; Texas;*

*Infrastructure or Requirements for the 2008 Ozone and 2010 Nitrogen Dioxide*

*National Ambient Air Quality Standards; Final Rule*," 81 Fed. Reg. 62,375 (Sept.

9, 2016) (attached as Exhibit A).  The agency docket number for the rule is EPA-

R06-OAR-2012-0953.

Jurisdiction and venue for this petition are proper in this Court under 42 U.S.C. § 7607(b), and this petition for review is timely filed within sixty days of the date of publication of the final rule in the Federal Register.  *See* 81 Fed. Reg. at 62,377 ("Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by November 8, 2016.").

Dated: November 7, 2016

_____

Joshua D. Smith (Ore. Bar No. 071757)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560 (phone)
(510) 208-3140 (facsimile)
joshua.smith@sierraclub.org


Sanjay Narayan (Cal. Bar No. 183227)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5769 (phone)
(510) 208-3140 (facsimile)
sanjay.narayan@sierraclub.org

*Counsel for Sierra Club*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| **SIERRA CLUB**, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Case No._____ |
| ) | |
| **UNITED STATES** ) | |
| **ENVIRONMENTAL PROTECTION** ) | |
| **AGENCY**, and **GINA MCCARTHY**, ) | |
| in her official capacity as ) | |
| Administrator of the United States ) | |
| Environmental Protection Agency, ) | |
| ) | |
| *Respondent*. ) | |

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.1 have an interest in

the outcome of this case. These representations are made in order that the judges of

this court may evaluate possible disqualification or recusal.

1.  Petitioner: Sierra Club.  As required by Federal Rule of Appellate Procedure
    26.1, the undersigned counsel certifies that Sierra Club has no parent
    company, and no publicly-held company owns a 10% or greater interest in
    Sierra Club.

2.  Counsel for Sierra Club: Joshua Smith and Sanjay Narayan with Sierra Club.

3.      <u>Respondents</u>: United States Environmental Protection Agency; Gina McCarthy, Administrator, U.S. Environmental Protection Agency; Ron Curry, Regional Administrator, U.S. Environmental Protection Agency.

4.      <u>Counsel for Respondents United States Environmental Protection Agency and Gina McCarthy</u>: Lorretta E. Lynch, Attorney General of the United States; Avi Garbow, General Counsel, U.S. Environmental Protection Agency; Suzanne Smith, U.S. Environmental Protection Agency; and Kristi Smith, U.S. Environmental Protection Agency.

Respectfully submitted,

<u>/s/ Joshua D. Smith</u>
Joshua D. Smith
Attorney of Record for Sierra Club

# CERTIFICATE OF SERVICE

On November 7, 2016, I served the foregoing Petition for Review by

certified mail, return receipt requested, on the following parties of interest:


United States Environmental Protection Agency
Office of the Administrator, Mail Code 1101A
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460
(202) 564-4700

The Honorable Gina McCarthy, in her official capacity as
Administrator of the United States Environmental Protection Agency
Office of the Administrator, Mail Code 1101A
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460
(202) 564-4700

The Honorable Loretta Lynch, Attorney General
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
(202) 514-2000

Avi Garbow, General Counsel
United States Environmental Protection Agency
Office of General Counsel, Mail Code 2310A
1200 Pennsylvania Ave., NW
Washington, DC 20460
(202) 564-8040

Correspondence Control Unit
Office of General Counsel (2311)
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

/s/ Joshua D. Smith
Joshua D. Smith
*Counsel for Sierra Club*

Exhibit A

Dated: August 24, 2016.

**Mark Hague,**

*Regional Administrator, Region 7.*

For the reasons stated in the preamble, EPA is amending 40 CFR part 52 as set forth below:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

## Subpart R—Kansas

■ 2. In § 52.870(e) the table is amended by adding entry (44) in numerical order to read as follows:

## § 52.870 Identification of plan.

\* \* \* \* \*

(e) \* \* \*

### EPA-APPROVED KANSAS NONREGULATORY SIP PROVISIONS

| Name of nonregulatory SIP revision | Applicable geographic or nonattainment area | State submittal date | EPA approval date | Explanation |
|---|---|---|---|---|
| \* | \* | \* | \* | \* |
| (44) Section 110(a)(2) Infrastructure Requirements for the 2012 PM$_{2.5}$ NAAQS. | Statewide ............................... | 11/16/15 | 9/9/16, [Insert **Federal Register** citation]. | This action addresses the following CAA elements: 110(a)(2)(A), (B), (C), (D), (E), (F), (G), (H), (J), (K), (L), and (M). 110(a)(2)(I) is not applicable. [EPA–R07–OAR–2016–0313; FRL–   ] |

[FR Doc. 2016–21474 Filed 9–8–16; 8:45 am]

**BILLING CODE 6560–50–P**

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

[EPA–R06–OAR–2012–0953; FRL–9950–77–Region 6]

## Approval and Promulgation of Air Quality Implementation Plans; Texas; Infrastructure or Requirements for the 2008 Ozone and 2010 Nitrogen Dioxide National Ambient Air Quality Standards

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving elements of State Implementation Plan (SIP) submissions from the State of Texas for Ozone (O$_3$) and Nitrogen Dioxide (NO$_2$) National Ambient Air Quality Standards (NAAQS). These submittals address how the existing SIP provides for implementation, maintenance, and enforcement of the 2008 O$_3$ and 2010 NO$_2$ NAAQS (infrastructure SIPs or i-SIPs). These i-SIPs ensure that the State's SIP is adequate to meet the State's responsibilities under the Federal Clean Air Act (CAA).

**DATES:** This rule is effective on October 11, 2016.

**ADDRESSES:** EPA has established a docket for this action under Docket ID No. EPA–R06–OAR–2012–0953. All documents in the docket are listed on the *http://www.regulations.gov* Web site. Although listed in the index, some information is not publicly available, *e.g.,* Confidential Business Information or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the Internet and will be publicly available only in hard copy form. Publicly available docket materials are available either electronically through *http://www.regulations.gov* or in hard copy at the EPA Region 6, 1445 Ross Avenue, Suite 700, Dallas, Texas 75202–2733.

**FOR FURTHER INFORMATION CONTACT:** Sherry Fuerst, telephone (214) 665–6454, *fuerst.sherry@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document "we," "us," and "our" means the EPA.

## I. Background

The background for this action is discussed in detail in our February 8, 2016, proposal (81 FR 6483). In that document we proposed to approve elements of SIP submittals from the State of Texas for the 2008 O$_3$ and 2010 NO$_2$ NAAQS. These submittals address how the existing SIP provides for implementation, maintenance, and enforcement of the 2008 O$_3$ and 2010 NO$_2$ i-SIPs.

We received comments on the proposal submitted jointly from two organizations. Our response to the comments are below.

## II. Response to Comments

*Comment:* We received one set of comments—submitted jointly by the Sierra Club and Downwinders at Risk—on the February 8, 2016 proposal to approve certain elements of Texas's SIP submissions for the 2008 ozone and 2010 NO$_2$ NAAQS. These comments are provided in the docket for today's rulemaking action. The commenters contend that EPA cannot approve the section 110(a)(2)(A) portion of Texas's 2008 ozone infrastructure SIP submission because of Fifth Circuit "binding precedent" purportedly holding this portion of the submission must "prohibit upwind sources in Texas from significantly contributing to nonattainment in downwind areas" in Texas. Specifically, the commenters contend that there are five coal-fired power plants in East Texas that "significantly contribute" to Dallas-Fort Worth's ozone nonattainment problem and that the Texas i-SIP fails to address those emissions.

*Response:* We disagree with the commenters that infrastructure SIPs must include detailed attainment and maintenance plans for all areas of the state and must be disapproved if air quality data and modeling show current and future nonattainment. We believe that section 110(a)(2)(A) is reasonably interpreted to require states to submit SIPs that reflect the first step in their planning for attaining and maintaining a new or revised NAAQS and that they contain enforceable control measures and demonstration that the state has the available tools and authority to develop and implement plans to attain and maintain the NAAQS.

The commenters suggest that EPA must disapprove the Texas ozone infrastructure SIP because of the fact that areas in Texas have air quality data and modeling projections above or forecasting above the standard, which proves that the infrastructure SIP is

inadequate. We disagree with the commenters because EPA does not believe that section 110(a)(2)(A) requires detailed planning SIPs demonstrating either attainment or maintenance for specific geographic areas of the state. The infrastructure SIP is triggered by promulgation of the NAAQS, not designation. Moreover, infrastructure SIPs are due three years following promulgation of the NAAQS. Thus, during a significant portion of the period that a state has available for developing the infrastructure SIP, it does not know what the designation will be for individual areas of the state. In light of the structure of the CAA, our long-standing position regarding infrastructure SIPs is that they are general planning SIPs to ensure that the state has adequate resources and authority to implement a NAAQS in general throughout the state and not detailed attainment and maintenance plans for each individual area of the state.

Our interpretation that infrastructure SIPs are more general planning SIPs is consistent with the statute as understood in light of its history and structure. When Congress enacted the CAA in 1970, it did not include provisions requiring states and the EPA to label areas as attainment or nonattainment. Rather, states were required to include all areas of the state in ''air quality control regions'' (AQCRs) and section 110 set forth the core substantive planning provisions for these AQCRs. At that time, Congress anticipated that states would be able to address air pollution quickly pursuant to the very general planning provisions in section 110 and could bring all areas in compliance with the NAAQS within five years. Moreover, at that time, section 110(a)(2)(A)(i) specified that the section 110 plan provide for ''attainment'' of the NAAQS and section 110(a)(2)(B) specified that the plan must include ''emission limitations, schedules, and timetables for compliance with such limitations and such other measures as may be necessary to insure attainment and maintenance [of the NAAQS].'' In 1977, Congress recognized that the existing structure was not sufficient and many areas were still violating the NAAQS. At that time, Congress for the first time added provisions requiring states and EPA to identify whether areas of the state were violating the NAAQS (*i.e.,* were nonattainment) and established specific planning requirements in section 172 for areas not meeting the NAAQS. In 1990, many areas still had air quality not meeting the NAAQS and

Congress again amended the CAA and added yet another layer of more prescriptive planning requirements for each of the NAAQS, with the primary provisions for ozone in section 182. At that same time, Congress modified section 110 to remove references to the section 110 SIP providing for attainment, including removing pre-existing section 110(a)(2)(A) in its entirety and renumbering subparagraph (B) as section 110(a)(2)(A). Additionally, Congress replaced the clause ''as may be necessary to insure attainment and maintenance [of the NAAQS]'' with ''as may be necessary or appropriate to meet the applicable requirements of this chapter.'' Thus, the CAA has significantly evolved in the more than 40 years since it was originally enacted. While at one time section 110 did provide the only detailed SIP planning provisions for states and specified that such plans must provide for attainment of the NAAQS, under the structure of the current CAA, section 110 is only the initial stepping-stone in the planning process for a specific NAAQS. More detailed, later-enacted provisions govern the substantive planning process, including planning for attainment of the NAAQS.

For all of these reasons, EPA disagrees with the commenters that we must disapprove an infrastructure SIP revision if there are monitored or forecasted violations of the standard in the state and the section 110(a)(2)(A) revision does not have detailed plans for demonstrating how the state will bring that area into attainment. Rather we believe that the proper inquiry at this juncture is whether the state has met the basic structural SIP requirements appropriate at the point in time we are acting upon the submittal.

Further, we disagree with the commenters' suggestion that the Texas SIP does not adequately address the CAA section 110(a)(2)(A) requirement for enforceable emission limits based on *Sierra Club* v. *EPA,* 314 F.3d 735 (5th Cir. 2002). The commenters contend that the Fifth Circuit's opinion in *Sierra Club* mandates disapproval by EPA of this i-SIP because Texas has areas measuring nonattainment of the NAAQS at issue. The Fifth Circuit's opinion is not ''binding precedent'' on this point, and mandates no such disapproval.

To the extent the Fifth Circuit discussed section 110(a)(2)(A) at all in *Sierra Club,* it was in dicta. The Fifth Circuit's *Sierra Club* opinion primarily concerned the distinct issue of whether EPA's ''extension of the statutory date'' for Beaumont, Texas to attain the one-hour ozone NAAQS (and approval of Texas's attainment SIP based on that

extension) complied with the CAA.[1] The court's lone citation to CAA section 110(a)(2)(A) appears in a portion of the opinion titled, ''Factual and Procedural Background,'' following a brief discussion of CAA section 110(a)(2)(D)(i)(I). Read in full context, it is clear that the court's mention of section 110(a)(2)(A) is merely a recitation of the regulatory background, not a holding:

Under the CAA, states must adopt SIPs specifying emission limitations applicable to pollution sources in order to maintain and enforce each NAAQS. 42 U.S.C. 7410(a). SIPs are submitted to the EPA, which may approve, conditionally approve, or disapprove the SIPs in full or in part. *Id.* § 7410(k). Significantly, the CAA has a provision that requires SIPs to contain provisions regulating emissions that ''contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any such national primary or secondary ambient air quality standard.'' *Id.* § 7410(a)(2)(D)(i)(I). In addition, as noted in the challenged final action, the EPA has interpreted 42 U.S.C. 7410 (a)(2)(A) as incorporating a similar requirement that an upwind area be prohibited from contributing significantly to nonattainment in a downwind area within the same state. *See* 66 FR 26,917.[2]

This lone mention of CAA section 110(a)(2)(A) was likely because EPA had invoked its interpretation of that section as one justification for why it was reasonable to read the Act as permitting the relevant deadline extension. While this passing mention of CAA section 110(a)(2)(A) was dicta, the Fifth Circuit's decision invalidating EPA's extension policy was not: Regardless of the merits of EPA's proffered interpretation of CAA section 110(a)(2)(A), the court held at *Chevron* step one that the CAA did not authorize EPA to grant extensions of the attainment date.[3]

The EPA interpretation mentioned off-hand in the *Sierra Club* opinion—*i.e.,* that section 110(a)(2)(A) incorporates a similar requirement for *intrastate* transport as section 110(a)(2)(D)(i)(I) does for *interstate* transport—is no longer the Agency's interpretation and has not been so for quite some time.[4] EPA's prior

---

[1] *See Sierra Club* v. *EPA,* 314 F.3d 735, 739–43 (5th Cir. 2002). The case also addressed whether EPA had reasonably concluded that no additional Reasonably Available Control Measures were required for the Beaumont area. *See id.* at 743–45.

[2] *Id.* at 737.

[3] *Id.* at 740–41.

[4] Likewise, the details of the Agency's interpretation of CAA section 110(a)(2)(D)(i)(I) have also changed, in part guided by U.S. Supreme Court and D.C. Circuit case law evaluating EPA's rulemakings under that provision. *See, e.g., North Carolina* v. *EPA,* 531 F.3d 896 (D.C. Cir. 2008)

interpretation is not "carved in stone"; agencies are permitted to change their interpretations.[5] EPA's most recent interpretation of CAA section 110(a)(2)(A) can be found in the 2013 Infrastructure SIP Guidance,[6] as well as relatively recent regulatory actions.[7]

Even if the Fifth Circuit had not reversed the EPA's extension policy at *Chevron* step one (which it did), and even if the EPA had not subsequently changed its interpretation of CAA section 110(a)(2)(A) (which it has), the commenters would still be incorrect in their contention that EPA must use the same "significant contribution" analysis for intrastate emissions that EPA has recently used for interstate emissions under section 110(a)(2)(D)(i)(I). That analysis is based in part on an evaluation of "the total 'collective contribution'" of multiple upwind *interstate* sources that is captured at various significance thresholds;[8] it was never intended to apply in the intrastate context. Nor does the relevant statutory phrase, "significant contribution," appear in CAA section 110(a)(2)(A).

Section 110(a)(2)(A) of the CAA requires enforceable emission limits and control measures. As noted in the 2012 Infrastructure SIP Guidance, a different part of the CAA, part D, outlines the process, timeframe, and substantive requirements for states to bring their nonattainment areas into attainment. The Fifth Circuit's *Sierra Club* opinion says nothing to the contrary. The court in no way ruled that infrastructure SIPs must contain provisions prohibiting upwind intrastate areas from "significantly contributing" to nonattainment in downwind intrastate areas, or that EPA must apply the same technical analysis to intrastate emissions as it does for interstate emissions under a different subsection. Commenters' reliance on the Fifth Circuit's opinion as setting forth that precedent is misplaced. In short, we disagree that the *Sierra Club* opinion constitutes "binding precedent" requiring us to disapprove the infrastructure SIP for CAA section 110(a)(2)(A).

(evaluating EPA's Clean Air Interstate Rule, 70 FR 25,162 (May 12, 2005); *EME Homer City Generation, L.P.* v. *EPA,* 696 F.3d 7 (D.C. Cir. 2012), *rev'd* 134 S. Ct. 1584 (2014), *remanded to* 795 F.3d 118 (D.C. Cir. 2015) (evaluating EPA's Cross-State Air Pollution Rule, 76 FR 48208 (Aug. 8 2011)).

[5] *See Nat'l Cable and Telecomms. Ass'n* v. *Brand X Internet Servs.,* 545 U.S. 967, 981–82 (2005) (quoting *Chevron, U.S.A., Inc.* v. *NRDC,* 467 U.S. 863–64 (1984)).

[6] Guidance on Infrastructure State Implementation Plan (SIP) Elements under Clean Air Act Sections 110(a)(1) and 110(a)(2).

[7] *See, e.g.,* 80 FR 33840.

[8] *See, e.g.,* 76 FR 48208, 48236–37 (Aug. 8, 2011).

## III. Final Action

We are approving elements of the (1) December 13, 2012, SIP submittal for the State of Texas pertaining to the implementation, maintenance and enforcement of the 2008 ozone NAAQS, and; (2) December 7, 2012, SIP submittal pertaining to the implementation, maintenance and enforcement of the 2010 nitrogen dioxide NAAQS as outlined in our February 8, 2016, proposal. Specifically, EPA is approving the following infrastructure elements or portions thereof: 110(a)(2)(A), (B), (C), (D)(i) (portions pertaining to PSD for 2008 $O_3$ and 2010 $NO_2$ and portions pertaining to nonattainment and interference with maintenance for 2010 $NO_2$), D(ii), (E), (F), (G), (H), (K), (L) and (M).

## IV. Statutory and Executive Order Reviews

Under the CAA, the Administrator is required to approve a SIP submission that complies with the provisions of the Act and applicable Federal regulations. 42 U.S.C. 7410(k); 40 CFR 52.02(a). Thus, in reviewing SIP submissions, our role is to approve state choices, provided that they meet the criteria of the CAA. Accordingly, this action merely approves state law as meeting Federal requirements and does not impose additional requirements beyond those imposed by state law. For that reason, this action:

- Is not a "significant regulatory action" subject to review by the Office of Management and Budget under Executive Orders 12866 (58 FR 51735, October 4, 1993) and 13563 (76 FR 3821, January 21, 2011);
- Does not impose an information collection burden under the provisions of the Paperwork Reduction Act (44 U.S.C. 3501 *et seq.*);
- Is certified as not having a significant economic impact on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*);
- Does not contain any unfunded mandate or significantly or uniquely affect small governments, described in the Unfunded Mandates Reform Act of 1995 (Pub. L. 104–4);
- Does not have Federalism implications as specified in Executive Order 13132 (64 FR 43255, August 10, 1999);
- Is not an economically significant regulatory action based on health or safety risks subject to Executive Order 13045 (62 FR 19885, April 23, 1997);
- Is not a significant regulatory action subject to Executive Order 13211 (66 FR 28355, May 22, 2001);

- Is not subject to requirements of section 12(d) of the National Technology Transfer and Advancement Act of 1995 (15 U.S.C. 272 note) because application of those requirements would be inconsistent with the CAA; and
- Does not provide EPA with the discretionary authority to address, as appropriate, disproportionate human health or environmental effects, using practicable and legally permissible methods, under Executive Order 12898 (59 FR 7629, February 16, 1994).

In addition, the SIP is not approved to apply on any Indian reservation land or in any other area where EPA or an Indian tribe has demonstrated that a tribe has jurisdiction. In those areas of Indian country, the rule does not have tribal implications and will not impose substantial direct costs on tribal governments or preempt tribal law as specified by Executive Order 13175 (65 FR 67249, November 9, 2000).

The Congressional Review Act, 5 U.S.C. 801 *et seq.,* as added by the Small Business Regulatory Enforcement Fairness Act of 1996, generally provides that before a rule may take effect, the agency promulgating the rule must submit a rule report, which includes a copy of the rule, to each House of the Congress and to the Comptroller General of the United States. EPA will submit a report containing this action and other required information to the U.S. Senate, the U.S. House of Representatives, and the Comptroller General of the United States prior to publication of the rule in the **Federal Register**. A major rule cannot take effect until 60 days after it is published in the **Federal Register**. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by November 8, 2016. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See section 307(b)(2).)

## List of Subjects in 40 CFR Part 52

Environmental protection, Air pollution control, Incorporation by reference, Intergovernmental relations,

Nitrogen dioxide, Ozone, Reporting and recordkeeping requirements.

Dated: August 31, 2016.

**Ron Curry,**

*Regional Administrator, Region 6.*

40 CFR part 52 is amended as follows:

**PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS**

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

**Subpart SS—Texas**

■ 2. In § 52.2270(e), the table titled ''EPA Approved Nonregulatory

Provisions and Quasi-Regulatory Measures in the Texas SIP'' is amended by adding entries at the end for ''Infrastructure and Transport SIP Revisions for the 2010 Nitrogen Dioxide Standard'' and ''Infrastructure and Transport SIP Revisions for the 2008 Ozone Standard'' to read as follows:

**§ 52.2270  Identification of plan.**

\* \* \* \* \*

(e) \* \* \*

EPA APPROVED NONREGULATORY PROVISIONS AND QUASI-REGULATORY MEASURES IN THE TEXAS SIP

| Name of SIP provision | Applicable geographic or nonattainment area | State submittal/ effective date | EPA approval date | Comments |
|---|---|---|---|---|
| \* | \* | \* | \* | \* |
| Infrastructure and Transport SIP Revisions for the 2010 Nitrogen Dioxide Standard. | Statewide ..................... | 12/7/2012 | 9/9/2016, [Insert **Federal Register** citation]. | Approval for 110(a)(2)(A), (B), (C), (D)(i) (portions pertaining to nonattainment and interference with maintenance), D(ii), (E), (F), (G), (H), (K), (L) and (M). |
| Infrastructure and Transport SIP Revisions for the 2008 Ozone Standard. | Statewide ..................... | 12/13/2012 | 9/9/2016, [Insert **Federal Register** citation]. | Approval for 110(a)(2)(A), (B), (C), (D)(i) (portion pertaining to PSD), D(ii), (E), (F), (G), (H), (K), (L) and (M). |

[FR Doc. 2016–21593 Filed 9–8–16; 8:45 am]

**BILLING CODE 6560–50–P**

---

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Part 52**

**[EPA–R01–OAR–2015–0238; FRL–9951–94– Region 1]**

**Air Plan Approval; Connecticut; NOₓ Emission Trading Orders as Single Source SIP Revisions**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving a State Implementation Plan (SIP) revision submitted by the State of Connecticut. This revision continues to allow facilities to create and/or use emission credits using NOₓ Emission Trading and Agreement Orders (TAOs) to comply with the NOₓ emission limits required by Regulations of Connecticut State Agencies (RCSA) section 22a-174–22 (Control of Nitrogen Oxides). The intended effect of this action is to approve the individual trading orders to allow facilities to determine the most cost-effective way to comply with the state regulation. This action is being taken in accordance with the Clean Air Act (CAA).

**DATES:** This final rule is effective on October 11, 2016.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R01–OAR–2015–0238. All documents in the docket are listed on the *http://www.regulations.gov* Web site. Although listed in the index, some information is not publicly available, *e.g.,* CBI or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the Internet and will be publicly available only in hard copy form. Publicly available docket materials are available electronically through *http:// www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** Donald Dahl, Air Permits, Toxics, and Indoor Programs Unit, Office of Ecosystem Protection, U.S. Environmental Protection Agency, EPA New England Regional Office, 5 Post Office Square, Suite 100, (OEP05–2), Boston, MA 02109–3912, phone number (617) 918–1657, fax number (617) 918– 0657, email *Dahl.Donald@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document whenever ''we,'' ''us,'' or ''our'' is used, we mean EPA.

**Table of Contents**

I. Summary of SIP Revision
II. Final Action
III. Statutory and Executive Order Reviews

**I. Summary of SIP Revision**

On November 15, 2011, the Connecticut Department of Energy and

Environmental Protection (CT DEEP) submitted a formal revision to its State Implementation Plan (SIP). This SIP revision consists of eighty-nine source-specific Trading Agreement and Orders (TAOs) that allow twenty-four individual stationary sources of nitrogen oxide (NOₓ) emissions to create and/or trade NOₓ emission credits in order to ensure more effective compliance with EPA SIP-approved state regulations for reducing NOₓ emissions. We previously approved source-specific TAOs of the same kind issued by CT DEEP under this program for these same sources on September 28, 1999 (64 FR 52233), March 23, 2001 (66 FR 16135), and September 9, 2013 (78 FR 54962). The November 15, 2011 SIP submittal also includes Consent Order 8029A issued to Hamilton Sundstrand which addresses Volatile Organic Compound (VOC) emissions.

On June 15, 2016 (81 FR 38999) EPA published a notice of proposed rulemaking (NPR) for the State of Connecticut's 2011 SIP revision submittal, proposing approval of the TAOs, except for Consent Order 8029A. The NPR also proposed approval of the revised TAO 8110A issued to Yale University. This TAO was originally submitted as part of a July 1, 2004 SIP revision from Connecticut, and was modified by CT DEEP on May 29, 2015.

The rationale supporting EPA's proposed rulemaking action is explained in the published NPR. The NPR is available in the docket for this